Essie B. JOHNSON, Relator,

v.

ANGELUS CONVALESCENT HOME, et al., Respondents,

Minnesota Department of Public Welfare, Respondents.

No. C0–83–1728.

Supreme Court of Minnesota.

Sept. 21, 1984.

Edward F. Rooney, Minneapolis, for relator.

Andrew J. Morrison, St. Paul, for Angelus Convalescent Home, and Employers Ins. of Wausau.

Hubert H. Humphrey III, Atty. Gen., Dept. of Public Welfare Benefit Recovery Section, St. Paul, for respondents.

PETERSON, Justice.

In a two to one decision the Workers' Compensation Court of Appeals denied employee's petition to vacate the medical expense provision in an award on stipulation filed on December 4, 1981, on the ground she had not made a sufficient showing of mistake. Our review of the record persuades us that a hearing should be sched-

uled at which the parties may present any further pertinent evidence on the issue.

The award required employee to pay all of Dr. Thomas Johnson's medical expenses to date and any charges made by Dr. Johnson and by the Plymouth Avenue Medical Center (Medical Center) in the future. The provision reflected Paragraph 7 of the settlement underlying the award, which provided:

> 7. That Employer and Insurer shall pay, provide or reimburse, and shall continue to pay, provide or reimburse for the reasonable and related costs of medical treatment arising out of the incident and injury described in part I herein. It is further understood that the *Employee* will pay all of Dr. Thomas Johnson's expenses to date. The Employee agrees that the Employer and Insurer will not be responsible for any charges from Dr. Thomas Johnson or by the Plymouth Avenue Medical Center in the future.

(Emphasis added). On August 30, 1983, employee filed a petition to vacate the award, alleging that the parties had intended to provide that the employer and insurer would pay all of Dr. Johnson's expenses to the date of settlement and that "the Employee" was mistakenly substituted for "the Employer and Insurer" in the second sentence of Paragraph 7. In support of her claim of mistake, employee points to the structure of the provision, arguing that if the parties had intended that she would be liable for all of the medical charges of Dr. Johnson and the Medical Center, past and future, they would have expressed that intent in one succinct statement.

■ Employee also alleged that she is illiterate and relied on her counsel; that he failed to notice the claimed error in either the award or the settlement until May 1982; and that he then informed the insur-

er of the claimed mistake, but the latter refused to acknowledge that it had occurred.[1]

In support of the claim of mistake, employee filed copies of two letters. One, sent by her counsel to the Medical Center on October 9, 1981, less than a month before the parties executed the settlement, stated that "under the terms of the settlement, all of Dr. Johnson's reasonable medical bills to date will be paid but hereafter, the workers compensation insurer will not pay any future medical bills of Dr. Johnson." The other letter, written in July 1981 by the insurer's counsel to an attorney representing the Department of Public Welfare, an intervenor in the compensation proceeding, referred to prior discussions between the attorneys and to their agreement "that my client [the employer-insurer] would pay all medical expenses up until August of 1979," after which they "would reimburse you for one-half of all medical expenses related to Ms. Johnson's back condition."

The employer-insurer opposed the petition to vacate, claiming that the letter to the Department of Public Welfare's attorney expressed no intention concerning the settlement ultimately made, that the settlement had expressed the parties' agreement that the insurer would have no liability for medical charges made by Dr. Johnson or the Medical Center, and that it "has been the past practice of this Employer and Insurer to negotiate the amount of the medical bills to be paid to the Plymouth Avenue Medical Center and specifically Dr. Thomas Johnson."

■ In reviewing the record, we agree with the WCCA that the language of the medical expense provision in the settlement makes an inference of mistake—that the parties intended "the Employer and Insur-

---

1. The majority of the WCCA panel felt that there had been significant delay in the filing of the petition to vacate the award after the insurer's refusal to acknowledge the claimed mistake. That delay apparently was occasioned by employee's attempt to recover medical expenses through filing a claim petition which she dismissed shortly before filing the petition to vacate the award in August 1983. We do not believe the delay requires denial of the relief employee seeks, particularly in view of the fact that before May 1982 the insurer had destroyed "unnecessary documents" concerning the terms to be incorporated in the settlement, which it had drafted.

er" for "the Employee" in the second sentence of the provision—a reasonable one. The letter written by employee's counsel to the Medical Center further supports the claimed mistake, and even the letter written by the employer-insurer's counsel to the intervenor is inconsistent with their present position. We note also that the employer-insurer did not allege a practice of avoiding payment of all medical expenses incurred by injured employees with Dr. Johnson and the Medical Center. In this case it appears that employee did not receive any medical treatment elsewhere, and a settlement providing that the employer-insurer would not be liable for any part of the employee's medical expenses to the date of the award seems unusual. That consideration, as well as the fact that the evidence as a whole tends to support the claim of mistake, persuades us that the order denying the petition should be set aside and an evidentiary hearing held at which the parties can present any further pertinent evidence on the issue.

Employee is awarded attorney fees of $400.

The order is set aside and the matter remanded for further proceedings.